**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14178
Non-Argument Calendar
_____

DERICK LEVELL JONES,

*Petitioner-Appellant,*

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:24-cv-00259-LC-MJF

_____

Before ROSENBAUM, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Derick Jones, a Florida state prisoner, appeals the district court's order dismissing with prejudice his amended 28 U.S.C.

§ 2254 habeas corpus petition as untimely.  We granted Jones a certificate of appealability on the following issue[1]:

> Whether the district court erred in dismissing Jones's 28 U.S.C. § 2254 petition as time-barred when the court concluded that, on direct appeal, Jones could have sought discretionary review of the Florida First District Court of Appeal's affirmance of his conviction in the Florida Supreme Court.

After careful review, we agree that Jones's § 2254 petition was time-barred, so we affirm the judgment of the district court.

## I.

Jones was sentenced to 40 years' imprisonment after he was convicted in the trial court in Escambia County, Florida, of one count of robbery with a weapon.  He timely appealed to the First District Court of Appeal ("First DCA").  On appeal, Jones argued that the trial court wrongly denied his motion to suppress the victim's out-of-court identification of Jones in a photo line-up as the robber.  The First DCA affirmed the trial court with a written opinion on September 9, 2019.

---

[1] In accordance with *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc), we noted in the certificate of appealability that "reasonable jurists would also debate whether Jones's § 2254 petition stated a valid claim of the denial of a constitutional right, with respect to the several claims of ineffective assistance of counsel alleged in the petition."  Because we conclude that Jones's petition is time-barred, we cannot reach Jones's ineffective-assistance claims.

In its opinion, the First DCA gave two reasons for affirming. First, the court noted that Jones had failed to preserve his argument that the identification procedures were unnecessarily suggestive because the victim was shown pictures of Jones before being shown the photo line-up. And second, the court rejected Jones's argument on the merits. In support of its conclusions, the First DCA cited Florida caselaw and applied that caselaw to the facts of Jones's case. After the First DCA's decision, Jones never sought additional review in the Florida Supreme Court.

Rather, on November 1, 2020, Jones filed a *pro se* motion to correct an illegal sentence under Fla. R. Crim. P. 3.800. The state circuit court denied the motion, and the First DCA affirmed. The mandate issued June 11, 2021.

Next, on July 8, 2021, Jones filed a counseled motion for post-conviction relief under Fla. R. Crim. P. 3.850. He asserted three claims for ineffective assistance of counsel. Again, the court denied Jones's motion, and the First DCA affirmed. The mandate issued June 10, 2024.

Jones then filed a counseled 28 U.S.C. § 2254 habeas petition that same day, June 10, 2024, in federal district court. He asserted the ineffective-assistance-of-counsel claims that he had argued in his state-court motion for postconviction relief. The Secretary of the Florida Department of Corrections (the "State") moved to dismiss the petition as untimely. It contended that the one-year deadline for Jones to file his petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") had expired on October

10, 2020—a year after Jones's thirty days to seek discretionary review in the Florida Supreme Court of the First DCA's opinion affirming Jones's conviction and sentence ran.

The magistrate judge recommended granting with prejudice the State's motion to dismiss because Jones's habeas petition was time-barred. As the magistrate judge explained, AEDPA gave Jones one year to file his habeas petition from when the state court's judgment became final. By the magistrate judge's calculations, Jones's judgment became final on October 9, 2019, thirty days after Florida's First DCA issued its opinion affirming Jones's conviction and sentence. Because the magistrate judge concluded that Jones could have sought discretionary review by the Florida Supreme Court, he reasoned that Jones's failure to apply for such review made Jones's conviction final when the time for seeking that review ran. And because Jones hadn't filed his habeas petition within a year of that time (including statutory tolling for his properly filed post-conviction and collateral-review cases), the magistrate judge determined that Jones's statutory period had expired before he filed his petition.

The district court adopted the magistrate judge's recommendation. So it dismissed Jones's petition as time-barred. The court also denied Jones a certificate of appealability. Later, though, a judge of our Court issued a certificate of appealability to Jones.

## II.

We review de novo the district court's decision to dismiss a § 2254 petition as untimely, but we review the district court's

factual findings for clear error.  *See San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011).

### III.

### A.

On appeal, Jones argues that the district court erred in determining he untimely filed his habeas petition.  He asserts that the Florida Supreme Court lacked jurisdiction to review the First DCA's decision affirming his conviction and sentence.  As a result, Jones says, the First DCA's decision did not become final until the U.S. Supreme Court's 90-day window to seek certiorari expired.  And under that timeframe, Jones continues, he filed his habeas petition timely.  We are not persuaded.

AEDPA imposes a one-year statute of limitations on the filing of § 2254 petitions.  As relevant here, that period begins to run on the date that the petitioner's conviction becomes final.  28 U.S.C. § 2244(d)(1)(A).  A judgment becomes "final" for the purposes of AEDPA's limitation period with "the conclusion of direct review or the expiration of the time for seeking such review." *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (quoting § 2244(d)(1)(A)).  But when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," AEDPA tolls the limitation period.  28 U.S.C. § 2244(d)(2).

This case requires us to consider when the judgment imposing Jones's criminal conviction and sentence became final, so we can calculate the one-year AEDPA statute-of-limitations deadline

from that time. That question comes down to whether the Florida Supreme Court had discretionary jurisdiction to hear an appeal from the First DCA's September 9, 2019, decision affirming Jones's conviction.

If the Florida Supreme Court had such jurisdiction, then Jones could not seek certiorari from the U.S. Supreme Court until after he sought discretionary review in the Florida Supreme Court. That's so because, "[i]n the absence of a clear statutory or constitutional bar to higher state court review, the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for certiorari." *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) (internal citations omitted).

And if the Florida Supreme Court had discretionary jurisdiction to entertain an appeal of the First DCA's decision affirming Jones's judgment, Jones had thirty days to seek review from the Florida Supreme Court on that First DCA decision. *See* Fla. R. App. P. 9.110(b). Because he did not do so, if the Florida Supreme Court had discretionary jurisdiction to hear Jones's appeal, Jones's conviction became final on October 9, 2019. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that when a state prisoner does not seek review from the state's highest court, the judgment becomes final for purposes of AEDPA's statute of limitations when the time to seek further review expires).

If Jones's conviction became final on October 9, 2019, even with statutory tolling, he filed his § 2254 petition beyond the one-year statutory period. Under that scenario, more than a year went

by between the conviction's finality and November 1, 2020, when Jones filed his first post-conviction motion.  As a result, Jones's time to file a § 2254 petition under AEDPA had already run, even before Jones filed his state post-conviction motion.  *See Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (noting that "once a deadline has expired, there is nothing left to toll").

But if the Florida Supreme Court lacked discretionary jurisdiction, then Jones had 90 days from the First DCA's issuance of its decision to seek certiorari from the U.S. Supreme Court.  *See* U.S. Sup. Ct. R. 13.  Because Jones sought no such review, under that scenario, his conviction became final on December 8, 2019.  *See Pugh*, 465 F.3d at 1297, 1299–1300 (holding that when a habeas petitioner is entitled to petition the U.S. Supreme Court for a writ of certiorari, his conviction "become[s] final upon the expiration of the 90-day period for seeking that review").  Jones then filed a Fla. R. Crim. P. 3.800 motion on November 1, 2020, which was pending through June 11, 2021.  And on July 8, 2021, Jones filed a Fla. R. Crim. P. 3.850 motion for post-conviction relief.  Again, the court denied Jones's motion, and the First DCA affirmed.  The mandate issued June 10, 2024, the same day that Jones filed his § 2254 petition.  Three-hundred twenty-nine days passed from December 8, 2019, to November 1, 2020.  Another 27 passed between the issuance of the mandate on Jones's Rule 3.800 motion and his filing of his Rule 3.850 motion, for a total of 356 days.  Because 356 days falls within AEDPA's one-year statute of limitations, if the Florida Supreme Court lacked discretionary jurisdiction to hear an appeal

8                    Opinion of the Court                    24-14178

from the First DCA's decision, Jones's § 2254 motion would be timely.

That brings us back to the question that determines this case: did the Florida Supreme Court have discretionary jurisdiction to entertain an appeal of the First DCA's decision?  Florida law requires us to conclude it did.

Florida's constitution reserved the Florida Supreme Court's jurisdiction for "the narrow class of cases enumerated in Article V, Section 3(b) of the Florida Constitution." *Gandy v. State*, 846 So. 2d 1141, 1143 (Fla. 2003) (quotation marks omitted).  Of this class, the Florida Constitution vests the Florida Supreme Court with discretionary subject-matter jurisdiction to review DCA decisions that "expressly declare[] valid a state statute . . . or that expressly and directly conflict[] with a decision of another [DCA] or of the [Florida Supreme] [C]ourt on the same question of law."  Fla. Const. art. V, § 3(b)(3); *see also* Fla. R. App. P. 9.030(a)(2)(A) (stating the same).  In applying Fla. Const. art. V, § 3, the Florida Supreme Court has held that it has discretionary jurisdiction to review a DCA decision when the opinion "expressly addresses a question of law within [its] four corners" by including "a statement or citation effectively establishing a point of law upon which the decision rests." *The Fla. Star v. B.J.F.*, 530 So. 2d 286, 288 (Fla. 1988).

Florida courts have construed discretionary jurisdiction to apply even when no conflict actually exists, positing that a DCA opinion "hypothetically could create conflict if there were another opinion reaching a contrary result." *Id.*; *Gandy*, 846 So. 2d at

1143-44; *Ford Motor Co. v. Kikis*, 401 So. 2d 1341, 1342 (Fla. 1981) ("It is not necessary that a district court explicitly identify conflicting district court or supreme court decisions in its opinion in order to create an 'express' conflict under section 3(b)(3).").

But when the DCA does not explicitly identify a conflicting decision, the DCA must have "included some facts in its decision so that the question of law addressed by the [DCA] in its decision can be discerned by [the Florida Supreme] Court." *Persaud v. State*, 838 So. 2d 529, 532 (Fla. 2003). DCA opinions that "fail[] to expressly address a question of law, such as [decisions] issued without opinion or citation" and unelaborated *per curiam* affirmances, fall outside of Florida Supreme Court's discretionary jurisdiction. *Fla. Star*, 530 So. 2d at 288 n.3; *see Grate v. State*, 750 So. 2d 625, 626 (Fla. 1999) (noting that "[r]egardless of how a petition seeking review of a district court decision is styled, this Court does not have jurisdiction to review *per curiam* decisions rendered without opinion").

The language warranting jurisdiction must also appear in the majority opinion. *See Reaves v. State*, 485 So. 2d at 829, 830 (Fla. 1986). So the language in dissenting and concurring opinions can't establish jurisdiction. *See id.*

Here, the district court correctly denied Jones's habeas petition as untimely. That's so because the First DCA's opinion permitted discretionary review by the Florida Supreme Court. To begin, the First DCA's opinion was not an unelaborated *per curiam* affirmance. *See The Fla. Star*, 530 So. 2d at 288 n.3. The four-page opinion started by setting out the relevant facts regarding how the

victim identified Jones in the photo line-up. The First DCA then "expressly address[ed] a question of law within the four corners of [its] opinion." *See The Fla. Star*, 530 So. 2d at 288. In this respect, the opinion answered the legal question of whether the trial court should have excluded the victim's out-of-court identification.

Not only that, but the First DCA's opinion discussed rules of law "upon which the decision rested." *See id.* That is, the First DCA listed the two factors that trial courts must consider when excluding an out-of-court identification, citing *Simmons v. State*, 934 So. 2d 1100 (Fla. 2006), and *Grant v. State*, 390 So. 2d 341 (Fla. 1980). Even before applying the two factors to Jones's case, the First DCA invoked DCA caselaw in support of its preliminary point that Jones had failed to preserve his argument about the allegedly unnecessarily suggestive photo line-up.

In a similar manner, when the First DCA applied the two out-of-court identification factors to the case, the court drew on caselaw from the Florida Supreme Court and the First DCA itself to conclude that the procedure that the officers used was not unnecessarily suggestive. More specifically, in reasoning that no testimony existed that Jones was the only person in the photo line-up matching the description that the victim provided, the First DCA cited another First DCA case in support. And again, in explaining that the deputy never pushed the victim to select a particular photo but told him to take his time, the First DCA cited a case from the Florida Supreme Court as a point of contrast with the deputy's actions.

To be sure, the First DCA didn't explicitly identify a decision that conflicted with its own opinion. But under *The Florida Star* and its progeny, it didn't have to do so for the Florida Supreme Court to have discretionary jurisdiction. The First DCA reached a decision—after addressing a question of law—that "hypothetically could create conflict" if another DCA or a Florida Supreme Court opinion "reach[ed] a contrary result." *See The Fla. Star*, 530 So. 2d at 288. And it did so by applying Florida law to the facts of Jones's case.

Jones and the Dissent point out the difference between the conventional understanding of "expressly and directly conflicts," from Fla. Const. art. V, § 3(b), and Florida courts' interpretation of the phrase to mean "hypothetically could create conflict." But we are in no position to opine on Florida's interpretation of its state laws. *See Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1292–93 (11th Cir. 2012) (discussing "the ordinary deference granted [to] state courts when they interpret matters of state concern"); *see also Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) (explaining that in applying state law, we are "bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise").

Because the First DCA issued a written opinion expressly addressing a question of law that could hypothetically create conflict, the Florida Supreme Court had discretionary jurisdiction to review the case. So when Jones failed to seek review in the Florida

12                    Opinion of the Court                 24-14178

Supreme Court, his judgment became final 30 days after the First DCA issued its decision, on October 9, 2019.  And because Jones failed to file his § 2254 petition within a year of that date, including tolled time, his petition is time-barred.[2]

The Dissent asserts that we have misunderstood Florida law. It rests its position on footnote 3 of *The Florida Star*.  *See* Dissent at 5.  In particular, it points to the following language from that footnote:  "[T]here can be no actual conflict discernible in an opinion containing only a citation to other case law . . . unless the citation explicitly notes a contrary holding of another district court or of this Court."  530 So. 2d at 288 n.3.  Based on this language, the Dissent suggests that "the Florida Supreme Court could not have exercised its Article V, Section 3(b) discretionary jurisdiction and reviewed the First DCA's decision in *Jones* absent a citation in the DCA's opinion explicitly noting the contrary holding of another DCA or the Florida Supreme Court."  Dissent at 6.

The Dissent is mistaken.  The quoted sentence from footnote 3 of *The Florida Star* explicitly applies its rule to only those otherwise-unelaborated opinions that "contain[] only a citation to other case law."  530 So. 2d at 288 n.3.  But the DCA's opinion in

───────────────────

[2] Because Jones failed to seek discretionary review from the Florida Supreme Court, it appears he also failed to exhaust his state remedies before seeking a federal writ of habeas corpus.  *See* § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  But we do not decide this case on that basis because the district court did not rule on this basis, so the certificate of appealability does not raise it and the parties did not brief it.

24-14178                Opinion of the Court                13

*Jones*'s case does not fall into that category.  It is not unelaborated but for a case citation.  Rather, as we've explained, the DCA's opinion is four pages long, cites governing caselaw on legal issues, and applies that caselaw to the facts in Jones's case.  So it meets the requirements for discretionary Supreme Court jurisdiction under Florida's Supreme Court's interpretation of its constitution.

Were it the Dissent's call, it may not have construed Florida's constitution the same way as Florida's Supreme Court did.  But we don't get to second-guess the Florida Supreme Court's interpretation of the Florida constitution—even if we are convinced the Florida Supreme Court is wrong.  Rather, we must abide by it.  And under the Florida Supreme Court's interpretation of Florida's constitution, it is clear that the Florida Supreme Court had discretionary jurisdiction over an appeal from Jones's District Court of Appeal opinion.

**B.**

Though our discussion above resolves all the issues on appeal, the Dissent raises additional issues.  We respond to those issues here.

First, the Dissent complains that we "implicitly call[] into question our holding in [*Williams v. Wainwright*, 452 F.2d 775, 776–77 (5th Cir. 1971)].  Dissent at 9.  There, as the Dissent says, our predecessor Court held that Florida prisoners need not seek review in the Florida Supreme Court to exhaust their state remedies.  *See Williams*, 452 F.2d at 776–77.  Dissent at 9.  And, as the Dissent correctly notes again, "we explicitly based our decision on the fact that

'the existence of conflict jurisdiction in the Florida Supreme Court with its limited scope offer[ed] no practical remedy that [the petitioner] was required to exhaust under 28 U.S.C. § 2254.'" *Id.* (quoting *Williams*, 452 F.2d at 777).

But there are two problems with *Williams*. First, we issued *Williams* in 1971—seventeen years *before* the Florida Supreme Court issued *The Florida Star*, which provides the Florida Supreme Court's definitive interpretation of its own discretionary jurisdiction. Indeed, *Williams* expressly cautions that the opinion engages in "the difficult task of trying to make a determination of the available state remedies without aid from the district court or the state, and with petitioner, of course, claiming that he knows of no state remedy that he has not pursued to exhaustion." 452 F.2d at 776. After *The Florida Star*, we need not speculate any more. Nor may we. We must follow Florida law as Florida interprets it. So after *The Florida Star*, *Williams*'s interpretation of Florida law became invalid.

And second, as to the Dissent's point that "we explicitly based our decision [in *Williams*] on the fact that 'the existence of conflict jurisdiction in the Florida Supreme Court with its limited scope offer[ed] no practical remedy that [the petitioner] was required to exhaust under 28 U.S.C. § 2254,'" *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), abrogated that reasoning. In *Boerckel*, the Supreme Court held that "Section 2254(c) requires only that state courts give state prisoners a *fair* opportunity to act on their claims." *Id.* at 844. And, the Court explained, when "state prisoners have the right to raise their claims through a petition for discretionary

review in the State's highest court," that satisfies Section 2254(c), even if state prisoners have "no right to *review* in [that court]." *Id.* at 845 (cleaned up).

As the Supreme Court reasoned, comity requires that determination because "state courts should have the first opportunity to review" a prisoner's claim that his "continued confinement for a state court conviction violates federal law." *Id.* at 844.  After all, "[t]his rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Id.* at 845 (cleaned up).  So far from the Dissent's suggestion that our decision today "directly interfer[es] with the jurisdiction and docket of the Florida Supreme Court," Dissent at 13, comity requires our determination.

In short, then, our ruling today creates no intracircuit conflict with *Williams* because *Williams* was abrogated long ago.

Finally, the Dissent objects to the nonprecedential nature of this opinion, suggesting that we are "trying to hide" something. Dissent at 14.  But of course, the vast majority of the opinions we issue as a Circuit are nonprecedential.  Our reasons for issuing opinions nonprecedentially may vary, but usually, we do so because the decision breaks no new ground.  That is, it decides nothing that we haven't decided before.  And Circuit jurisprudence is voluminous enough without adding to the burdens of judges, lawyers, and litigants by making opinions that decide nothing new necessary

reading on a particular issue.  That's the case here as well, for all the reasons we've already explained.

But in this case, we also have another reason for not publishing.  This decision turns on Florida's interpretation of Florida law.  And we are not the ultimate arbiters of Florida law.  Rather, we must follow the Florida courts' interpretation of Florida law, as long as it does not violate the U.S. Constitution.  Here, no one suggests Florida's interpretation of its own law violates the U.S. Constitution.  Because we must defer to Florida's interpretation of its own law, our opinion today adds nothing new to Circuit jurisprudence for this reason as well.  Under these circumstances, we do not think publication is warranted.  Of course, should any active member of the Court disagree with our decision today, nothing stops that member from seeking en banc review—even though the opinion is unpublished.  *See, e.g., Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025 (11th Cir. 2022) (en banc) (en banc opinion issued following rehearing en banc on case for which the panel issued an unpublished opinion); *Bostock v. Clayton Cnty. Bd. of Comm'rs*, 894 F.3d 1335 (11th Cir. 2018) (Rosenbaum, J., dissenting from denial of rehearing en banc on the unpublished panel opinion in the case).

**AFFIRMED.**

24-14178                    TJOFLAT, J., Dissenting                    1

TJOFLAT, Circuit Judge, Dissenting:

Article V, Section 3(b)(3) of the Florida Constitution states that the Supreme Court of Florida "[m]ay review any decision of a district court of appeal . . . that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." The Florida Rules of Appellate Procedure implement this discretionary jurisdiction. Rule 9.030(a)(2)(A)(vi) states that the "discretionary jurisdiction of the supreme court may be sought to review . . . decisions of district courts of appeal that . . . are certified to be in direct conflict with decisions of other district courts of appeal."

The issue this appeal presents is whether the Florida Supreme Court had Article V, Section 3(b)(3) jurisdiction to review the decision of the First District Court of Appeal ("First DCA") affirming petitioner Derick Jones' conviction for "robbery with a weapon." *Jones v. State*, 278 So. 3d 903 (Fla. Dist. Ct. App. 2019). The Majority holds that it would. *Ante*, at 7–8. It bases its holding on language the Florida Supreme Court used in *The Florida Star v. B.J.F.* ("*Florida Star*"), 530 So. 2d 286 (Fla. 1988), an opinion issued in response to a certified question by the U.S. Supreme Court.[1] Specifically, the Majority quotes the following:

---

[1] In *Florida Star,* the Florida Supreme Court invoked its discretionary jurisdiction under Article V, Section 3(b)(6) of the Florida Constitution to "review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which

2                    TJOFLAT, J., Dissenting                    24-14178

> In applying Fla. Const. art. V, § 3, Florida courts have
> held that the Florida Supreme Court has discretionary
> jurisdiction to review a DCA decision when [its] opin-
> ion "expressly addresses a question of law within [its]
> four corners" by including "a statement or citation ef-
> fectively establishing a point of law upon which the
> decision rests."

*Ante*, at 8 (quoting *Florida Star*, 530 So. 2d at 288).

In *Jones*, the DCA established within the four corners of its opinion the point of law on which it rested its decision:

> Before excluding an out-of-court identification, the
> trial court must consider two factors: "(1) did the po-
> lice employ an unnecessarily suggestive procedure in
> obtaining an out-of-court identification; [and] (2) if

---

there is no controlling precedent of the supreme court of Florida." 530 So. 2d at 287; Fla. Const. art. V, § 3(b)(6).

  In *The Florida Star v. B.J.F.*, 484 U.S. 984, 108 S. Ct. 499 (1987), the Supreme Court of the United States

> certifie[d] to the Supreme Court of Florida and respectfully re-
> quest[ed] that Court to answer, the following question:
> Whether the Florida Supreme Court had jurisdiction, pursu-
> ant to Article V, Section 3(b)(3) of the Florida Constitution or
> otherwise, to hear Appellant's appeal in this cause from the
> Florida First District Court of Appeal?

  The question posed was unambiguous. It called for a yes or no answer and an accompanying explanation. The Florida Supreme Court declined to "decide anew" whether it had jurisdiction to review the First DCA's decision in the case. *Florida Star*, 530 So. 2d at 288. Instead, it limited its answer "to the context in which the question was posed." *Id.*

24-14178                TJOFLAT, J., Dissenting                3

> so, considering all the circumstances, did the sugges-
> tive procedure give rise to a substantial likelihood of
> irreparable misidentification." *Simmons v. State*, 934
> So.2d 1100, 1118 (Fla. 2006) (quoting *Grant v. State*,
> 390 So.2d 341, 343 (Fla. 1980)).

278 So. 3d at 904 (alteration in original).

The *Jones* Court applied this point of law to the out-of-court identification Jones challenged and found no error in the trial court's denial of Jones' motion to exclude the identification. The DCA therefore affirmed the trial court's judgment and sentence. *Id.* at 905.

Since the opinion in *Jones* "expressly addresses a question of law within [its] four corners" by including "a statement or citation effectively establishing a point of law upon which the [Court's] decision rest[ed]," the Majority holds that the Florida Supreme Court could have reviewed the First DCA's *Jones* decision under Article V, Section 3(b)(3). The Majority so holds even though the First DCA did not certify, pursuant to Rule 9.030(a)(2)(A)(vi), that its decision was in direct conflict with a decision of another DCA. Indeed, the opinion could not have certified a direct conflict. Why? Because the Court's decision rested on a point of law Florida Supreme Court precedent had firmly established.

The legal effect of the Majority's holding is that the Florida Supreme Court has discretion to review a DCA's decision under Article V, Section 3(b)(3) if the decision rests on a point of law which the DCA opinion does not certify is in direct conflict with the

4                   TJOFLAT, J., Dissenting                   24-14178

decision of another DCA. For this to be true, we have to believe that the Florida Supreme Court in *Florida Star* effectively amended Article V, Section 3 of the Florida Constitution on its own initiative to enable it to review *any* DCA decision that "expressly addresses a question of law within [its] four corners" by including "a statement or citation effectively establishing a point of law upon which the decision rests." *Ante*, at 8.

I dissent for two reasons. First, it goes without saying that the Florida Supreme Court lacked the authority to amend the State's constitution. Second, the language the Majority quotes from the *Florida Star* opinion misrepresents the Court's holding.

**I.**

I first address the Majority's reading of *Florida Star*. The Majority cites the following passage in the *Florida Star* opinion to support its holding that the Florida Supreme Court had jurisdiction to review *Jones*:

> This Court in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself.[3] That is, the opinion must contain a statement or citation effectively establishing a point of law upon which the decision rests.

*Florida Star*, 530 So. 2d at 288.

24-14178                TJOFLAT, J., Dissenting                5

This quotation is only part of *Florida Star's* holding. The rest of its holding is in footnote 3, which the Majority overlooks. The footnote reads in full:

> This Court does not, however, have subject-matter jurisdiction over a district court opinion that fails to expressly address a question of law, such as opinions issued without opinion or citation. Thus, a district court decision rendered without opinion or citation constitutes a decision from the highest state court empowered to hear the cause, and appeal may be taken directly to the United States Supreme Court.[2] Moreover, *there can be no actual conflict discernible in an opinion containing only a citation to other case law . . . unless the citation explicitly notes a contrary holding of another district court or of this Court. See Jollie v. State,* 405 So. 2d 418, 420 (Fla.1981).

*Id.* at 288 n.3 (emphasis added).

In *Jones*, the DCA cited two Florida Supreme Court cases for the point of law on which it rested its decision, *Simmons v. State* and *Grant v. State.* Both cases stated the point of law regarding the test a trial court must employ in deciding whether to quash an out-of-court identification exactly as the *Jones* Court did: "(1) did the police employ an unnecessarily suggestive procedure in obtaining an out-

---

[2] A DCA decision rendered with an opinion may be taken directly to the United States Supreme Court as well—provided that the Florida Supreme Court lacks Article V, Section 3 jurisdiction to hear the case. *See* 28 U.S.C. § 1291.

6                    TJOFLAT, J., Dissenting                    24-14178

of-court identification; [and] (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." *Simmons,* 934 So. 2d at 1118; *Grant,* 390 So. 2d at 343.

This satisfied the Majority's point: "[T]he Florida Supreme Court has discretionary jurisdiction to review a DCA decision when the opinion 'expressly addresses a question of law within [its] four corners' by including 'a statement or citation effectively establishing a point of law upon which the decision rests.'" *Ante,* at 8. But it did not satisfy *Florida Star*'s requirement that *"there can be no actual conflict discernible in an opinion containing only a citation to other case law . . . unless the citation explicitly notes a contrary holding of another district court or of this Court."* 530 So. 2d at 288 n.3 (emphasis added).

In sum, the Florida Supreme Court could not have exercised its Article V, Section 3(b)(3) discretionary jurisdiction and reviewed the First DCA's decision in *Jones* absent a citation in the DCA's opinion explicitly noting the contrary holding of another DCA or the Florida Supreme Court on the point of law upon which its *Jones* decision rested.

## II.

In holding that the Florida Supreme Court could have reviewed the First DCA's *Jones* decision, the Majority appears to conflate the Florida Supreme Court's jurisdiction to decide whether it had Article V, Section 3(b)(3) jurisdiction to review the decision and

the Court's Article V, Section 3(b)(3) jurisdiction to review the decision on the merits.

As the Majority sees it, a DCA decision *does not* constitute "a decision from the highest state court empowered to hear the cause." *Florida Star*, 530 So. 2d at 288 n.3. Thus, a petitioner standing in Jones' shoes must petition the Florida Supreme Court for the discretionary review of an adverse DCA decision if he wants to seek relief from the U.S. Supreme Court. *And* he must petition the Florida Supreme Court for discretionary review even though the DCA decision does not certify that the decision is in conflict with the decision of another DCA on a point of law.

Consider this. Had Jones petitioned the Florida Supreme Court to review the *Jones* decision under Article V, Section 3(b)(3), even though in its opinion the DCA did not and could not certify that a conflict existed between it and another DCA on a point of law, he would have violated his duty of candor to the Court. To require litigants to violate their duty of candor to the Court with a patently meritless Article V, Section 3(b)(3) petition for review for the sole purpose of obtaining a decision from the highest state court would make a mockery of justice.

## III.

The Majority also overlooks the fact that, assuming its interpretation of Article V, Section 3(b)(3) of the Florida Constitution is correct, Jones' petition for a writ of habeas corpus was not only untimely, but also insufficient under 28 U.S.C. § 2254(b)(1)(A) due to Jones' failure to exhaust his state remedies.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented" in his habeas petition. *Id.* § 2254(c). Section 2254 has not been interpreted to mean literally *any* available procedure. State prisoners are not required "to invoke extraordinary remedies when those remedies are alternatives to the standard review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S. Ct. 1728, 1732 (1999). Rather, § 2254(c) requires only that "state prisoners . . . file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.* at 847, 119 S. Ct. at 1733. Accordingly, when ordinary appellate review is before a State's supreme court, "a state prisoner must present his claims to [that] court in a petition for discretionary review in order to satisfy [§ 2254(b)(1)(A)'s] exhaustion requirement." *Id.* at 839–40, 119 S. Ct. at 1730.

Under the Majority's holding, Jones had the right to seek Florida Supreme Court review of the DCA's decision. *Ante*, at 11. The fact that Jones failed to seek said review means that he failed to exhaust his state remedies, see *O'Sullivan v. Boerckel*, 526 U.S. at 839–40, 119 S. Ct. at 1730, and therefore is statutorily foreclosed from petitioning the federal courts for a writ of habeas corpus, 28 U.S.C. § 2254(b)(1)(A). Jones' failure to seek Florida Supreme

24-14178                TJOFLAT, J., Dissenting                9

Court review of the First DCA's decision therefore amounted to a failure to exhaust his state remedies.

This Court has previously held that Florida prisoners need not seek review in the Florida Supreme Court to exhaust their state remedies. *Williams v. Wainwright*, 452 F.2d 775, 776–77 (5th Cir. 1971).[3] However, we explicitly based our decision on the fact that "the existence of conflict jurisdiction in the Florida Supreme Court with its limited scope offer[ed] no practical remedy that [the petitioner] was required to exhaust under 28 U.S.C. § 2254." *Id.* at 777. By holding that essentially any written DCA opinion is reviewable by the Florida Supreme Court, the Majority implicitly calls into question our holding in *Wainwright*. How are the habeas courts of this Circuit to rule when it appears that the Florida petitioner failed to seek review of his DCA decision—affirming his conviction on direct appeal or affirming the denial of his claim for collateral relief in the Florida Supreme Court—despite the fact that the text of Article V, Section 3(b)(3) explicitly prevents such review.

## IV.

I respectfully dissent from the Majority's holding that Jones' habeas petition was untimely. The Florida Constitution and Florida Supreme Court precedent are clear that the Florida Supreme Court lacked jurisdiction to review the First DCA's decision in *Jones*. As such, Jones' petition for a writ of habeas corpus in the District

---

[3] The Eleventh Circuit adopted the decisions of the Fifth Circuit, as they existed on September 30, 1981, as binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

10                    TJOFLAT, J., Dissenting                    24-14178

Court for the Northern District of Florida was both timely and properly exhausted.

⋆            ⋆            ⋆

The Majority opinion and my dissent are "unpublished."[4] This means that the Majority opinion does not constitute "binding

---

[4] *See* 11th Cir. R. 36-2.

> *Unpublished Opinions.* An opinion shall be unpublished unless a majority of the panel decides to publish it. Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. If the text of an unpublished opinion is not available on the internet, a copy of the unpublished opinion must be attached to or incorporated within the brief, petition, motion or response in which such citation is made. *But see* I.O.P. 7, *Citation to Unpublished Opinions by the Court*, following this rule.

The Majority of this panel, invoking Internal Operating Procedure ("I.O.P.") 6, decided that our opinions would be unpublished. I.O.P. 6 states:

> *Unpublished Opinions.* A majority of the panel determine whether an opinion should be published. Opinions that the panel believes to have no precedential value are not published. Although unpublished opinions may be cited as persuasive authority, they are not considered binding precedent. The court will not give the unpublished opinion of another circuit more weight than the decision is to be given in that circuit under its own rules. Parties may request publication of an unpublished opinion by filing a motion to that effect in compliance with FRAP 27 and the corresponding circuit rules.

11th Cir. R. 36 I.O.P. 6.

24-14178                TJOFLAT, J., Dissenting                11

precedent." But it "may be cited as persuasive authority."[5] That said, our decision will produce two possible scenarios in cases in which a Florida prisoner petitions a federal district court for a writ of habeas corpus under 28 U.S.C. § 2254. I describe both scenarios below.

### First Scenario

The district courts of the Eleventh Circuit might treat the Majority's opinion as "binding precedent." Consequently, in order to comply with § 2254's exhaustion requirement,[6] a prisoner, prior to filing his habeas petition, must seek Florida Supreme Court

---

[5] I.O.P. 7 states:

> *Citation to Unpublished Opinions by the Court.* The court generally does not cite to its "unpublished" opinions because they are not binding precedent. The court may cite to them where they are specifically relevant to determine whether the predicates for res judicata, *collateral estoppel*, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case.

11th Cir. R. 36 I.O.P. 7 (emphasis added). It would appear that the Secretary of the Florida Department of Corrections would be estopped in future habeas corpus proceedings bought under 28 U.S.C. § 2254 from denying that the judicial review of a criminal conviction includes a petition for Florida Supreme Court review under Article V, Section 3(b)(3) of the Florida Constitution.

[6] Section 2254(b)(1)(A) states: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."

12                    TJOFLAT, J., Dissenting                    24-14178

review of his conviction or an order denying relief from his conviction pursuant to Florida Rule of Criminal Procedure 3.850.

To avoid an exponential increase in the number of petitions the Florida Supreme Court will receive for such review,[7] the Secretary of the Florida Department of Corrections, a party here, may seek en banc review of our decision. Whether or not the Secretary seeks en banc review, the Majority's interpretation of the Supreme Court's holding in *Florida Star* will soon be back before this Court due to the disruption the prisoner petitions for review would cause the Florida Supreme Court's docket.[8]

*Second Scenario*

Alternatively, the district courts might become divided on whether to treat the Majority's opinion as "persuasive authority" or as no authority at all. In that case, whether a prisoner will have to seek review in the Florida Supreme Court will depend on (1) whether the district judge finds the Majority opinion persuasive or (2) whether the Secretary will waive the § 2254(B)(1)(A) exhaustion requirement.

However the exhaustion issue is resolved, the time and effort district judges expend on the debate over whether to give the

---

[7] The Florida Supreme Court, exercising its discretionary review under Article V, Section 3(b)(3), reviews the decisions of Six DCAs—each with jurisdiction to decide appeals in criminal cases.

[8] I assume the Florida Supreme Court would give priority to the prisoners' petitions for review given what is at stake, the prisoners' liberty.

Majority's opinion persuasive authority should be avoided. As in the first scenario, the Majority's interpretation of the Florida Supreme Court's holding in *Florida Star* will soon be back before this Court.

Putting these scenarios aside, our decision is unfortunate in several respects.

*First*, in fostering comity and in the interests of federalism, the U.S. Supreme Court has long stressed the fact that the trial of a criminal case in state court is the "main event." *See Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 2508 (1977). In enhancing the importance of the trial, the Supreme Court has encouraged the States to provide the remedies needed to correct trial court error timely, efficiently, and with minimal delay. Congress has followed suit by amending the laws governing the administration of the writ of habeas corpus. Those amendments effectively limit federal court interference in the states' administration of criminal justice. Today, this Court oversteps these limiting principles—directly interfering with the jurisdiction and docket of the Florida Supreme Court.

*Second*, the U.S. Supreme Court certified the jurisdictional question to the Florida Supreme Court in *Florida Star* in the interest of federalism and out of respect for the Florida Supreme Court. We should have done likewise. *See HM Fla.-ORL, LLC v. Governor of Fla.*, 137 F.4th 1207, 1260 (11th Cir.) (Tjoflat, J., dissenting), *reh'g en banc granted, opinion vacated sub nom. HM Fla.-ORL, LLC v. Sec'y of Fla. Dep't of Bus. & Pro. Regul.*, 160 F.4th 1282 (11th Cir. 2025). Instead of informing the Court that we are in doubt about its Article V,

Section 3(b)(3) jurisdiction, we take the matter into our own hands, knowing that our decision is tentative and that the Florida Supreme Court can, in effect, erase it.

*Third*, we owe a duty to the public to maintain a stable rule of law, especially in the administration of the writ of habeas corpus. Instead, we issue this unpublished opinion calculated to destabilize the administration of the writ *and* the jurisdiction of the Florida Supreme Court.

*Fourth*, we set the stage for another panel of this Court to say that we got it wrong.

*Fifth*, we choose to issue the opinion unpublished in a case of great public importance. What are we trying to hide?